# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>**BORNEO ESTRADA**,<br><br>DEBTOR. | CASE NO.: 20-BK-21768<br><br>CHAPTER 7<br><br>HON. A. BENJAMIN GOLDGAR<br>U.S. BANKRUPTCY JUDGE<br><br>**TELEPHONIC HEARING**<br>HEARING DATE: AUGUST 6, 2021<br>HEARING TIME: 11:15 A.M.<br>(LAKE) |

## U.S. TRUSTEE'S REPLY IN SUPPORT OF MOTION TO DISMISS

1. The Debtor used nearly his entire response arguing that the "hanging paragraph" in § 541(b)(7) and § 1322(f) work together to except both voluntary retirement plan contributions and retirement plan loan payments from "disposable income" — that is income that must be dedicated to pay unsecured creditors under a chapter 13 plan. *See* Response, pp. 4-7, Dkt. No. 33. He then asserts that because those amounts are excluded from disposable income, he would not have to dedicate any of his monthly income toward making plan payments in chapter 13 case. Finally, citing one case, the Debtor concludes that the majority of courts have held that having no disposable income as defined in § 1325(b) completely insulates a chapter 7 debtor from dismissal under § 707(b). That interpretation is contrary to the plain text of the Bankruptcy Code and a great majority of court opinions.

2. The Debtor has the ability to repay a significant portion of his unsecured debt

notwithstanding the mechanical definition of disposable income. The Debtor is making $617 per month in voluntary retirement contributions and retirement loan payments and paying another $350 per month to maintain a 2015 Harley-Davidson motorcycle. Selling his Harley and paring down his retirement payments would allow him to repay his unsecured debt in full. Granting relief under chapter 7 would be an abuse and therefore the case should be dismissed.

## I. ARGUMENT

3. The Debtor's attempt to make this case about what is or is not included in disposable income under 1325(b) must fail. Admittedly, there are a lot of conflicting opinions on whether future retirement contributions and retirement loan repayments constitute part of a debtor's "disposable income," *see, e.g., Davis v. Helbling* (In re Davis), 960 F.3d 346 (6th Cir. 2020), but that question is largely immaterial. This is not a chapter 13 case and the U.S. Trustee has not objected to confirmation of a plan based on the failure to meet the requirements of § 1325(b). This is a chapter 7 case and the U.S. Trustee has moved to dismiss as an abuse of *this chapter* based on a totality of the Debtor's financial circumstances.

### A.  The Text of the Code Warrants Dismissal.

4. Under section 707(b)(1) the court may dismiss a case if it "finds that granting relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). In 2005, BAPCPA amended § 707(b) to lower the showing required to dismiss a case from "substantial abuse" to merely "abuse." *Witcher v. Witcher* (In re Witcher), 702 F.3d 619, 622 (11th Cir. 2012). "BAPCPA [also] made it harder to obtain chapter 7

relief by eliminating the 'presumption in favor of granting the relief requested by the debtor'." *Id.*

5. BAPCPA also set the standards for determined abuse under § 707(b)(1) through two new subsections — §§ 707(b)(2) and (b)(3). *See id.* Section 707(b)(2) provides the calculation for the "means test" used to determine whether the case is presumptively abusive. *See* 11 U.S.C. § 707(b)(2). Section 707(b)(3) provides that even if the presumption of abuse does not arise or has been rebutted, the case may still be an abuse if it was filed in bad faith, *see* 11 U.S.C. § 707(b)(3)(A), or if a "totality of the circumstances…of the debtor's financial situation demonstrates abuse," *see* 11 U.S.C. § 707(b)(3)(B). The U.S. Trustee here has asserted that granting relief under chapter 7 would be an abuse based on a totality of the debtor's financial circumstances.

6. Under the totality of the debtor's financial circumstances test, a debtor's ability to repay a good portion of his debts is the primary factor. *See In re Bacardi*, 2010 Bankr. LEXIS 3, at *9 (Bankr. N.D. Ill. Jan. 6, 2010). Generally, courts look to Schedules I and J to determine the Debtor's ability to repay his debts. However, a "debtor's reported expenses are not accepted without question, they must be reasonable in light of a debtor's financial circumstances." *DeAngelis v. Shores* (In re Shores), 2010 Bankr. LEXIS 4912, at *8 (Bankr. M.D. Pa. Dec. 8, 2010). "To overcome a motion to dismiss under § 707(b)(3), the Debtors are not expected to 'live in poverty,' but some 'financial belt tightening' has to occur." *In re Gallichio*, 2019 Bankr. LEXIS 110, at *14-15 (Bankr. D.N.J. Jan. 9, 2019).

— 3 —

7. The Debtor does not argue with these general principles. He instead appears to argue that the definition of "disposable income" under § 1325(b) (along with §§ 541(b)(7) and 1322(f)) dispositively determine the Debtor's ability to pay under § 707(b)(3). Specifically, he asserts that because his retirement contributions and retirement loan repayments are excluded from the definition of "disposable income" used in § 1325(b), those amounts "should not be considered when conducting a repayment analysis under 11 U.S.C. § 707(b)(1) and (3)." Response, p. 7 of 9, Dkt. No. 33. This argument is incorrect.

B. **Sections 541(b)(7) and 1322(f) of Not Affect the § 707(b)(3) Analysis.**

8. Assuming the Debtor is correct that monthly retirement contributions and retirement loan repayments that a debtor intends to make during a chapter 13 plan are completely excepted from "disposable income" under § 1325(b), that still has little bearing on the 707(b)(3) analysis. As provided above, the most relevant factor in the § 707(b)(3) analysis is the Debtors ability to repay his debts. The analysis is focused on reality. If "a section 707(b) motion properly raises the question, a bankruptcy judge has a duty to consider the *actual* financial situation of a debtor[.]" Hon. Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under Section 707(b)(3)*, 71 Mo. L. Rev. 1035, 1036 (Fall 2006) (emphasis added). Therefore, even items that are excluded from "disposable income" must be taken into account under § 707(b)(3). For example, Social Security benefits may be excluded from the definition of disposable income, but they are still "certainly part of the 'totality' of the debtor's financial circumstances, and these benefits are available for paying expenses (and unsecured nonpriority debt)

just as much as other income." *Id.* at 1047-48. In other words, funds that are available, no matter the source, are taken into account under § 707(b)(3), notwithstanding the definition of disposable income under § 1325(b). *See id.* And the courts generally agree.

9. The Debtor's argument here is not new. Debtors across the country have been asserting that "the 'totality of the circumstances' inquiry compels the court to predict what would be required of the Debtors in a hypothetical chapter 13" since BAPCPA was passed. *See e.g., In re Baeza*, 398 B.R. 692, 697 (Bankr. E.D. Cal. 2008). But the "argument mischaracterizes the issue and misstates the law. The question before the court is not whether the Debtors *would be required* to pay anything to their unsecured creditors in a chapter 13, but rather, whether they have the *ability to pay* something substantial to their unsecured creditors." *Id.; see, also, In re Corridori*, 2010 WL 3522122, at *2; *In re Lamug*, 403 B.R. 47, 57-58 (Bankr. N.D. Cal. 2009) (whether the debtors would be required to pay anything into a hypothetical Chapter 13 case is irrelevant; the sole question is whether they have an ability to pay some suitable amounts to their creditors); *In re Wolf*, 390 B.R. 825, 834 (Bankr. D. S.C. 2008) ("This Court views eligibility for relief under another chapter as having either no or very minimal relevance to the proper framework for analyzing dismissal. There is no constitutional right to bankruptcy relief."); *In re Smith*, 585 B.R. 168, 179 (Bankr. W.D. Okla. 2018) (retirement contributions still relevant in the ability to pay analysis); *In re Tucker*, 389 B.R. 535, 539-40 (Bankr. N.D. Ohio 2008) (same).

10. In the end the "great majority of cases hold that BABCPA did not alter the court's obligation to consider retirement contributions [and retirement loan payments]… when determining the ability to pay under § 707(b)(3)." *In re Shagan*, 2019 Bankr. LEXIS 1612, at *17 (Bankr. D.N.J. May 23, 2019). These courts also generally hold that voluntary contributions or loan repayments are not necessary expenses and thus are not allowable as expenses when completing that analysis. *See In re Smith,* 585 B.R. at 180; *see also, In re Shagan*, 2019 Bankr. LEXIS 1612, at *17 (Bankr. D.N.J. May 23, 2019); *In re Masella*, 373 B.R. 514, 521 (Bankr. N.D. Ohio 2007).

11. Instead of focusing on the text of the Code, the primary argument debtors make for equating "disposable income" with the ability to repay analysis is the policy argument that it would be "senseless" or a "waste of time" to dismiss a chapter 7 case as an abuse when the debtor would be required to pay nothing in chapter 13. But there are also plenty of policy reasons why Congress could have decided to make the test under § 707(b) and § 1325(b) different.

12. Chapter 7 is a relatively quick and easy process to have debts discharged and therefore Congress could have determined that more income should be counted, and fewer deductions should be allowed when determining whether relief under chapter 7 should be granted. Chapter 13, on the other hand, is much longer and onerous process and Congress could have determined that the amounts debtors are required to pay into a plan for years should be more lenient. This may also incentivize debtors to choose chapter 13 over chapter 7.

13. Additionally, in chapter 13 parties in interest have the ability to seek post-confirmation modification of the debtor's plan. "Motions for modification would likely be based on the disposable income that the debtor actually has available for plan contributions, determined under judicially defined standards." Wedoff, *Judicial Discretion to Find Abuse Under Section 707(b)(3)*, 71 Mo. L. Rev. at 1043. Thus, Congress could have thought it appropriate to require a debtor to be in chapter 13 even with a *de minimus* monthly payment due to more generous deductions with the understanding that there was a chance that circumstance would change, and the plan payments could increase while the case was pending. Therefore, there are reasons not to have a seamless exchange between the two sections.

14. But there is no need to speculate on the thought process of a legislative body as a whole. It is not for the court graft the term "disposable income" into § 707(b) when it isn't there. Ultimately, "the judiciary's job is to enforce the law Congress enacted, not write a different one that judges think superior." *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003). The addition of §§ 1322(f) and 541(b)(7) did nothing to alter the totality of the circumstances test for dismissal under § 707(b).

## C. Section 707(b)(2) Supports this Conclusion.

15. The mechanical calculation under § 707(b)(2) to determine if the presumption of abuse has arisen also demonstrates that a case can easily be an abuse of chapter 7 even if the debtor would have no disposable income in a chapter 13. In broad terms, under § 707(b)(2) a case is presumed to be an abuse if the debtor's current monthly income under § 101(10A), reduced by statutory expenses, and then multiplied by 60

is greater than the threshold amount set out in the Code. 11 U.S.C. § 707(b)(2). Neither the definition of current monthly income nor the statutory expenses set out in the Code exclude voluntary retirement contributions or retirement loan payments from the calculation when determining whether the filing is presumptively abusive.

16. On the other hand, the same individual with a presumptively abusive chapter 7 case could have no disposable income under § 1325(b). This is because in addition to the statutory expenses allowed under § 707(b), the definition of disposable income also excludes additional expenses, including "any amounts required to repay [a retirement fund loan]," *see* 11 U.S.C. § 1122(f), and arguably intended future voluntary retirement contributions, *see* 11 U.S.C. § 541(b)(7); *Davis*, 960 F.3d 346.[1]

17. But these additional expenses allowed to be excluded from disposable income are only excluded from disposable income under § 1325(b). They are not excluded from currently monthly income or allowed as additional expenses under § 707(b)(2). Thus, a debtor could very easily find himself in a presumptively abusive chapter 7 case but have no disposable income in a chapter 13 case. *See, e.g., In re Castle,* 362 B.R. 846; *In re Smith*, 388 B.R. 885, 889 (Bankr. C.D. Ill. 2008) (presumption of abuse arose but no disposable income still an abuse); *In re Johns*, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (same); *In re Fechter*, 456 B.R. 65, 74 (Bankr. D. Mont. 2011) (same). In short, while the tests may be similar, the test for disposable income under chapter 13 allows for more expenses to be deducted. This is expressly done though the text of

---

[1] The definition of disposable income also excludes other expenses not excluded by the means test. *See In re Castle,* 362 B.R. 846, 849 (Bankr. N.D. Ohio 2006) (child support payments excluded from disposable income but not the means test).

the Code in providing that these additionally expenses are excluded from what is "disposable income" only, and not under § 707(b). *See* 11 U.S.C. §§ 541(b)(7); 1322(f); 1325(b). Thus, just because a debtor has no disposable income does mean a chapter 7 would not be abusive.

D. **Granting Relief Would be an Abuse of this Chapter.**

18. The analysis therefore remains under § 707(b)(3) whether the Debtor's claimed expenses, including voluntary retirement contributions and loan repayments, and his $350 per month to pay for his Harley-Davidson motorcycle, are necessary for his maintenance and support (the Debtor has no dependents). Or can these expenses be pared down with some belt tightening so that the Debtor could make some meaningful repayment to creditors. The answer is the latter, not the former.[2]

19. As provided in the motion to dismiss, the Debtor voluntarily contributes $329 per month to his retirement plan and pays another $288 per month to repay a retirement plan loan. That is a total of $617 per month. The Debtor also owns 2015 Harley-Davidson motorcycle that he asserts is worth about $12,000 and owes about $7,000 on. *See* Schedule D, Dkt. No. 1, p. 19 of 51. Thus, there is about $5,000 in equity in the motorcycle. The Debtor also makes monthly payments on the motorcycle in the amount of $350. *See* Amended Schedule J, Dkt. No. 19, p. 4 of 4. The total monthly amount made toward retirement and the motorcycle payments equals $967 per

---

[2] It must be noted that while the Debtor filed this case as a below median income debtor, his Amended Schedule I reflects gross monthly income of $5,067, or $60,804 per year. This is over the median income for a household of 1.

— 9 —

month ($329 + $288 + 350). That is $58,020 over 5 years. The Debtor's schedules reflect a total of $40,433 is unsecured debts so he can repay all of his debt.

20. If the Debtor would like to continue to repay his retirement fund loan to ensure he does not incur adverse tax consequences he could even do that and repay all of his debt over 5 years. If the Debtor temporarily halted voluntary contributions and sold the Harley he would have a an additional $679 per month available to repay his debts ($329 + $350). Over 5 years that is $40,740. If he was willing to use the equity in his motorcycle to repay his debts he could expedite that repayment. Again, the Debtor's schedules reflect a total of $40,433 is unsecured debts, so under either scenario the Debtor is capable of repaying all of his debt without having to overly tighten his belt, and certainly without having to live in poverty.

## II. CONCLUSION

21. The Debtor's debts are primarily consumer debts and therefore § 707(b) applies. The Debtor also has enough income to repay a substantial amount of unsecured debt outside of chapter 7 under a totality of the circumstances. It would be an abuse of chapter 7 to grant relief in this case.

DATED: July 8, 2021

PATRICK S. LAYNG
UNITED STATES TRUSTEE

By: /s/ David Paul Holtkamp
David Paul Holtkamp, Trial Attorney
OFFICE OF THE U.S. TRUSTEE
219 S. Dearborn, Room 873
Chicago, Illinois 60604
Main: (312) 353-5014
Cell: (202) 567-1489

# CERTIFICATE OF SERVICE

      I, David Paul Holtkamp, an attorney, certify that I served a copy of the U.S. Trustee's Reply in Support of Motion to Dismiss on each entity shown on the service list at the address shown and by the method indicated on July 8, 2021, before 5:00 p.m.

                                            */s/ David Paul Holtkamp*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice**:

| | |
|---|---|
| Edward H. Cahill: | amps@manleydeas.com |
| Ilene F. Goldstein: | ifgcourt@aol.com, IL35@ecfcbis.com |
| David Paul Holtkamp: | David.Holtkamp@usdoj.gov |
| Patrick S. Layng: | USTPRegion11.ES.ECF@usdoj.gov |
| David M. Siegel: | davidsiegelbk@gmail.com, R41057@notify.bestcase.com; johnellmannlaw@gmail.com |

**Parties Served via First Class Mail**:

Borneo Estrada
1310 Almaden Lane
Gurnee, IL 60031

Harley-Davidson Credit Corp.
14841 Dallas Parkway, Suite 425
Dallas, TX 75254